The City of Brundidge ("the City") and its workers' compensation carrier[1] petitioned the trial court seeking a credit for workers' compensation payments made to Coston Collier, an injured employee of the City, in the same amount Collier had recovered from a third-party tortfeasor. The trial court granted the petition and awarded the City an amount equal to Collier's award from the third-party tortfeasor, less attorney fees. Collier appealed to the Court of Civil Appeals, which reversed the trial court's order. Collier v. City of Brundidge, [Ms. 2020132, December 12, 2003] ___ So.2d ___ (Ala.Civ.App. 2003). The City petitioned this Court for a writ of certiorari to review whether the Court of Civil Appeals erred in reversing the trial court's award of credit to the City. We granted certiorari review. For the reasons discussed below, we reverse the judgment of the Court of Civil Appeals.
 I. Facts and Procedural History
We adopt the following facts and procedural history as set forth in the Court of Civil Appeals' opinion:
 "On May 5, 1999, Coston Collier (`the employee') was injured in an automobile accident while working in the line and scope of his employment with the City of Brundidge. At the time of the accident, the employee was 47 years old, and he had been employed with the City of Brundidge (`the employer') for 19 years. The accident caused two vertebral disks in the employee's neck to bulge and a disk in his lower back to herniate. Those injuries have prevented the employee from returning to work. The employee's treating physician opined that, as a result of the employee's injuries, the employee was permanently and totally disabled from employment. To avoid protracted litigation, the employer and the employee reached a settlement agreement whereby the employee would receive a payment every two weeks in the amount of $531.98 as workers' compensation benefits resulting from his permanent, total disability. That settlement agreement, filed with the trial court and incorporated into a judgment, included the following language:
 "`Employer/Defendant, the City of Brundidge, Alabama, and/or its insurance carrier, the Municipal Worker's Compensation Fund, Inc., and/or its worker's comp. administrator, Millennium Risk Managers, Inc. reserve any and all rights to recover and be reimbursed for any amount of compensation benefits paid to Employee/Plaintiff on account of any recovery from *Page 1131 
any third party as a result of this accident.'
 "The employee's injuries were caused when an automobile driven by Deborah Berry collided with the rear of Collier's vehicle. The employee pursued an action against Berry. At the time of the accident, Berry was insured under an automobile-liability insurance policy issued by Reliance Insurance Company (`Reliance'); her single-incident liability limit under the policy was $1,000,000. In June 2001, Reliance filed for protection under Chapter 11 of the United States Bankruptcy Code. As a result of Reliance's bankruptcy, [the Alabama Insurance Guaranty Association (`AIGA')] assumed the obligations of Reliance with respect to the employee's claim against Berry. See
§ 27-42-8(a)(2), Ala. Code 1975. Pursuant to the Guaranty Association Act, AIGA's liability is capped at the amount of $150,000 per incident. See
§ 27-42-8(a)(1), Ala. Code 1975. Eventually, the employee accepted $124,900 from AIGA to settle his claim against Berry.
 "The employer and its workers' compensation carrier, Municipal Worker's Compensation Fund, Inc., petitioned the trial court for the award of a credit against the employer's workers' compensation liability in the same amount that the employee had received from AIGA. The employee opposed the petition. On August 29, 2002, the trial court entered a judgment granting the employer's petition. In its judgment, the trial court stated:
 "`The facts in this case are undisputed, only the proper law to be applied is at issue.
 "`The [employer] insists that Section 25-5-11, Code of Alabama should control while the [employee] believes that Section 27-42-5[(4)] prevents the [employer] from recovering against him. This Court agrees with the [employer] and believes that it and its worker's compensation carrier are entitled to recover a refund of any benefits paid to [the employee] from April 30, 2002 to date and further are entitled to credit the balance of the [$124,900] recovered from [AIGA] on [the employer's] liability for worker's compensation benefits.'
 "Following a postjudgment motion filed by the employee, the trial court amended its judgment on October 8, 2002, to reduce the amount of the credit to $79,411.14 to reflect payment of attorney fees and expenses."
897 So.2d at 1119-20 (footnote omitted).
Collier appealed to the Court of Civil Appeals. The Court of Civil Appeals reversed the judgment of the trial court and remanded the case, holding that "the definition of a `covered claim' in § 27-42-5(4) specifically prevents the employer in this case from receiving a credit for workers' compensation benefits that are or will be paid." 897 So.2d at 1125.
 II. Standard of Review
"[B]ecause the underlying facts are not disputed and this appeal focuses on the application of the law to those facts, there can be no presumption of correctness accorded to the trial court's ruling." Beavers v. County of Walker, 645 So.2d 1365,1373 (Ala. 1994) (citing First Nat'l Bank of Mobile v.Duckworth, 502 So.2d 709 (Ala. 1987)). A ruling on a question of law carries no presumption of correctness, and appellate review is de novo. See Rogers Found. Repair, Inc. v. Powell,748 So.2d 869 (Ala. 1999); Ex parte Graham, 702 So.2d 1215 (Ala. 1997).
 III. Contentions of the Parties
The City argues that under § 25-5-11, Ala. Code 1975, it is entitled to a credit on *Page 1132 
the workers' compensation payments equal to the damages Collier collected from the third party who caused his work-related injury. The City contends that Alabama's statutory scheme shifts the compensation liability from the employer to the third party who is fundamentally responsible for the employee's injury. The City also argues that its right to reimbursement under § 25-5-11
is not abrogated by § 27-42-5(4) in this case because § 27-42-5(4), a part of the Alabama Insurance Guaranty Association Act, § 27-42-1 et seq., Ala. Code 1975 ("the Act"), which restricts payments by the Alabama Insurance Guarantee Association ("AIGA") to insurance companies, is a limitation only on the powers and duties of AIGA, not on the recipient of the funds. Because AIGA has already paid Collier and is not a party to this action, the City contends that Collier cannot use the Act to avoid reimbursing it as he is obligated to do under § 25-5-11. The City also argues that to disallow the City's subrogation right would be to allow Collier to recover twice for the same injury, thereby frustrating the purpose of the Act by placing Collier in a better position by the insurer's insolvency than the he would have been in had the other driver's insurance, Reliance Insurance Company, remained solvent.
Collier argues that the purpose of the Act is to alleviate financial loss to claimants and policyholders otherwise caused by insolvent insurers and that to fulfill this purpose and to ensure that funds are available for claimants and policyholders, the Act expressly prohibits using AIGA's funds to pay subrogation claims to insurance companies. Collier points out that this Court has already held that workers' compensation benefits are excluded from the definition of covered claims in § 27-42-5(4). Collier also argues that by receiving funds from AIGA he is not receiving a double recovery for a single injury because the award he received from AIGA was offset by the amount he received in workers' compensation. Collier also contends that a majority of the jurisdictions that have addressed this issue have held that the workers' compensation carrier is not entitled to subrogate against money paid by AIGA.
 IV. Statutory Background
Section 25-5-11(a), a part of the Alabama Workers' Compensation Act, § 25-5-1 et seq., Ala. Code 1975, states as follows:
 "If the injured employee . . . recovers damages against the other party, the amount of the damages recovered and collected shall be credited upon the liability of the employer for compensation. If the damages recovered and collected are in excess of the compensation payable under this chapter, there shall be no further liability on the employer to pay compensation on account of the injury or death. To the extent of the recovery of damages against the other party, the employer shall be entitled to reimbursement for the amount of compensation theretofore paid on account of injury or death."
Thus, an employer that pays benefits pursuant to the Workers' Compensation Act is entitled to reimbursement in the event the employee recovers damages from a third-party tortfeasor.
The Legislature, through the Act, has provided a method to protect victims of insolvent insurance companies. The statute calls for the payment of benefits, generally not to exceed $150,000, under specifically enumerated circumstances. In other words, the Act does not purport to leave the victim in the same position as he or she would have been in had the insurer not become insolvent; however, the victim is in *Page 1133 
a better position than he or she would have been without the Act.
Among the limits the Legislature established in formulating a remedy that does not attempt to simulate the situation that would have existed had the insurer not become insolvent is the definition of a "covered claim" to be applied in determining AIGA's obligation to pay. This definition, set forth at § 27-42-5(4), states that a "`[c]overed claim' [that is, a claim AIGA can pay] shall not include any amount due any reinsurer, insurer, insurance pool, or underwriting association, as subrogation recoveries or otherwise."
 V. Applicability of § 27-42-5(4) to Previously Paid Claims
Two unusual features undergird this case. First, the tortfeasor's insurance carrier has become insolvent. Second, AIGA has already paid this claim. The Court of Civil Appeals noted, "Obviously, if AIGA had properly brought the workers' compensation carrier into the third-party claim, as happens in most cases, the carrier would not be entitled to receive reimbursement for the medical expenses and compensation benefits paid on the employee's behalf; AIGA simply would have never made a payment at all." 897 So.2d at 1126. Presumably this observation is based upon a determination that AIGA could have successfully resisted payment on the ground that the claim was not a "covered claim" because it constituted an amount due an insurer as a subrogation recovery or otherwise pursuant to § 25-5-11(a) requiring that the proceeds would be payable to the employer to reimburse it for the amount of compensation previously paid. The City's workers' compensation carrier is not a party to this proceeding. Suffice it to say that a determination of whether reimbursement to an employer required by § 25-5-11(a) under circumstances where that employer is insured against workers' compensation claims constitutes a payment to an insurer as a subrogation recovery or otherwise within the meaning of § 27-42-5(4) is an issue not essential to the resolution of this proceeding. The fact, nevertheless, remains that AIGA has already paid this claim. That it may have done so voluntarily does not detract from the undisputed fact that payment has already been made.
The rationale of the Court of Civil Appeals depends on authority relevant to a determination of the status of the claim as a covered claim before any payment is either made by or determined to be due from AIGA. The definition of covered claim in § 27-42-5(4) deals only with the process of determining eligibility for the payment of the claim before it is made. The Court of Civil Appeals applied § 27-42-5(4) to an after-the-fact determination in the context of the effect of the requirement of § 25-5-11(a) that the employer be reimbursed. The Court of Civil Appeals erred in doing so because it applied § 27-42-5(4) in a setting where the statute, which does not admit of a post hoc application, does not apply.
The dissenting opinion of Judge Murdock, joined by Judge Crawley, succinctly states the reasoning that requires this Court to reverse the judgment of the Court of Civil Appeals and reject Collier's contention that the sums paid in settlement are not subject to the obligation to reimburse his employer pursuant to § 25-5-11(a). Judge Murdock wrote:
 "First, this provision [§ 27-42-5(4)] is a restriction on payments by AIGA to insurance companies and related organizations. No such payment was made by AIGA in the present case. Instead, AIGA made a payment directly to the injured employee.
Nothing in the statute prevents an employer (or other third party) from seeking reimbursement or *Page 1134 
`subrogation' from an amount already paid to a claimant by AIGA or from any other moneys that may come into the possession of the claimant. The plain meaning of the statute, therefore, supports the judgment of the trial court. See IMED Corp. v. Systems Engineering Assocs. Corp., 602 So.2d 344
(Ala. 1992).
 "Second, the purpose of § 27-42-5(4) is to protect the financial reserves of AIGA from solvent insurers so that those reserves will be available to aid the policyholders of insolvent insurers. This case, however, involves a payment that has already been made by AIGA. No ruling by this court will make that payment recoverable by AIGA. Denying the employer its reimbursement and subrogation rights would be at odds with the Workers' Compensation Act, without advancing the policy objectives of the Guaranty Association Act.
 "In this regard, it is important to recognize that in every one of the cases from other states cited in the main opinion in support of the result reached therein, the guaranty association was asserting its right not to make the payment at issue. In each of those cases, it was the guaranty association that was appropriately asserting its right, under the applicable statutes, to protect its reserves. It was the guaranty association in each of those cases that had the standing to assert its rights under the statute.
 "Even the opinion of a three-judge panel of the appellate division of the Superior Court of New Jersey described in the main opinion as `procedurally similar' to the present case, Sussman v. Ostroff, 232 N.J.Super. 306, 556 A.2d 1301 (App.Div. 1989), is distinguishable from the present case. In Sussman, before the guaranty association agreed to any settlement on behalf of the third-party tortfeasors, both it and the injured employee took the position that whatever the outcome of the employee's claim against the guaranty association the employee's recovery would not be subject to subrogation or reimbursement rights of the employer's workers' compensation carrier. After a settlement was reached between the employee and the guaranty association, but before any funds were paid out by the guaranty association, the employee filed a motion seeking the trial court's guidance as to the proper disposition of the settlement proceeds as between the employee, the workers' compensation carrier, and the guaranty association. Consistent with the position that the employee and the guaranty association had both taken before reaching a settlement, and in an effort to enforce the settlement they had reached, both the employee and the guaranty association argued to the trial court that none of the settlement funds should be paid by the guaranty association to the workers' compensation carrier. Both in its articulation of the issue presented and in its ultimate holdings, the New Jersey court rendered a decision that, in my view, is more supportive of my position in the present case than it is of the position outlined in the main opinion.
 "First, as to the issue presented, the New Jersey court stated:
 "`The primary issue posed by this appeal is whether the statutory workers' compensation lien for benefits paid to an injured employee by his employer's compensation insurer is enforceable against the Guaranty Association when it undertakes the defense and indemnification of the tortfeasor whose negligence caused the employee's injury and whose own liability carrier has become insolvent.' *Page 1135 
 "232 N.J.Super. at 308, 556 A.2d at 1301-02 (emphasis added). The court also outlined the contents of letters exchanged by the guaranty association and the employee taking the position that the workers' compensation lien would not be honored by the guaranty association and that `"there can be no recovery for [the employee's] Workers' Compensation payments from the funds under the guaranteed fund."' 232 N.J.Super. at 308-09, 556 A.2d at 1302.
 "Second, the New Jersey court held that the employee should not have the opportunity to obtain a double recovery:
 "`We are therefore convinced that the legislatively mandated interrelationship between the workers' compensation insurer, the Guaranty Fund, and the injured worker is simply this. The injured worker may not obtain a double recovery.'
 "232 N.J.Super. at 314-15, 556 A.2d at 1305 (emphasis added). Further, because the obligation of the guaranty association to the employee was resolved by way of a settlement agreement, rather than a court judgment, the New Jersey appellate court remanded the case for findings that could have led to the guaranty association's not being obligated to pay all of the agreed-upon settlement amount to the employee due to the pendency of the claim against those funds by the workers' compensation insurer. 232 N.J.Super. at 315-16, 556 A.2d at 1306.
 "In the present case, however, the guaranty association is not even a party to the litigation. It has already made the payment for which the statute arguably provides it protection. It could have objected to making the payment, moved to join the workers' compensation insurer as a party, and otherwise asserted its rights under the Guaranty Association Act, as did the guaranty associations in Sussman and the other cases relied upon by the main opinion. It did not. Instead, it voluntarily made the payment at issue, and it is not in any way seeking to recover that payment and no longer has a real interest in this litigation. Instead, it is the employee in the present case that is attempting to utilize the Guaranty Association Act for his own purpose. The Guaranty Association Act was not written for that purpose and, by its terms, does not provide for the result reached in the main opinion."
897 So.2d at 1127-29 (footnote and some emphasis omitted; some emphasis original; some emphasis added).
 VI. Conclusion
We adopt Judge Murdock's reasoning and reverse the judgment of the Court of Civil Appeals and remand the cause for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
HOUSTON, SEE, BROWN, JOHNSTONE, HARWOOD, WOODALL, and STUART, JJ., concur.
[1] The City's workers' compensation carrier is not a party to this appeal.