MAIN, Justice.
The Alabama Insurance Guaranty Association (“AIGA”) filed an action against Mercy Medical Association, an Alabama nonprofit corporation (“Mercy Medical”), and Catholic Health East, Inc., a Pennsylvania nonprofit corporation (“CHE”), seeking to recover money it had paid on behalf of Mercy Medical and CHE on workers’ compensation claims filed by employees of Mercy Medical as well as a judgment declaring its right to reimbursement of statutory benefits to be paid on the employees’ claims in the future.[1] AIGA, Mercy Medi *1065 cal, and CHE each moved for a summary judgment. The trial court entered a summary judgment in favor of Mercy Medical and CHE, concluding, as a matter of law, that AIGA was not entitled to reimbursement for payments made for claims prior to August 1, 2009 (the effective date of amendments to the act creating the AIGA, § 27-42-1 et seq., Ala.Code 1975 (“the AIGA Act”)), payments made after August 1, 2009, and future payments made on behalf of Mercy Medical and CHE on the employee’s workers’ compensation claim because the AIGA Act as it existed following amendments in 2000 (“the 2000 AIGA Act”) applied, not the AIGA Act as amended in 2009 (“the 2009 AIGA Act”) as urged by AIGA. Specifically, the trial court determined (1) that the 2000 AIGA Act applied because it was in effect at the time of the insolvency of Reliance National Insurance Company (“Reliance”), CHE’s workers’ compensation insurer, and at the time the workers’ compensation judgment was entered against Mercy Medical, (2) that the 2009 AIGA Act did not apply retroactively because the 2009 amendments to the AIGA Act substantively changed the law, and (3) that, under the 2000 AIGA Act, Mercy Medical’s net worth did not exceed $25,000,000, so AIGA could not recover any amounts it had paid on behalf of Mercy Medical. AIGA appealed. For the following reasons, we affirm.

I. Facts and Procedural History

In 1999, Brenda Keao, an employee of Mercy Medical, was injured in a workplace accident. Because Mercy Medical is one of CHE’s Regional Health Corporations (“RHCs”) and because CHE provides its RHCs with insurance services, CHE secured from Reliance workers’ compensation coverage for itself and all of its RHCs.[2] Thus, at the time of Keao’s accident, Mercy Medical had workers’ compensation insurance through Reliance. Reliance was a member insurer of AIGA, which is “a nonprofit unincorporated legal entity,” § 27-42-6, Ala.Code 1975, established under the AIGA Act. The purpose of the AIGA Act is “to provide a mechanism for the payment of covered claims under certain insurance policies, to avoid excessive delay in payments and to avoid financial loss to claimants or policyholders because of the insolvency of an insurer, to assist in the detection and prevention of insurer insolvencies and to provide an association to assess the cost of such protection among insurers.” § 27-42-2, Ala.Code 1975.
In October 2001, Reliance was declared insolvent and Keao’s workers’ compensation claim was forwarded to AIGA. AIGA retained defense counsel and defended Mercy Medical in Keao’s workers’ compensation action. In late 2002, the trial court ruled that Mercy Medical had employed Keao and that Keao was entitled to permanent total-disability benefits under the Workers’ Compensation Act. Mercy Medical appealed, and this Court, on certiorari review from the Court of Civil Appeals, held that the receipt of disability benefits did not preclude the payment of workers’ compensation benefits. See Ex parte Keao, 900 So.2d 442 (Ala.2004); Mercy *1066 Med. v. Keao, 900 So.2d 443 (Ala.Civ.App.2004).
In November 2009, AIGA filed an action against Mercy Medical and CHE, seeking reimbursement for benefits AIGA had paid on Mercy Medical’s behalf for Keao’s workers’ compensation claim both before and after August 1, 2009, as well as a judgment declaring its right to reimbursement of any statutory benefits to be paid on Keao’s workers’ compensation claim in the future.[3] AIGA based its action on the 2009 AIGA Act, claiming that the 2009 amendments to the AIGA Act applied retroactively. AIGA contended that it was entitled to reimbursement because Mercy Medical and CHE were “high net worth” insureds under the 2009 AIGA Act. See § 27-42-5(7), Ala.Code 1975 (defining “high net worth insured”). Mercy Medical and CHE filed answers denying that either entity was required to reimburse AIGA under the AIGA Act because, they contended, the 2009 AIGA Act did not apply in this case. Instead, Mercy Medical and CHE claimed that the 2000 AIGA Act, as it existed at the time of the Reliance insolvency and at the time the judgment was entered in Keao’s workers’ compensation action, controlled. AIGA, Mercy Medical, and CHE filed summary-judgment motions and briefs in support of their summary-judgment motions. The trial court, after considering the evidentiary submissions and the briefs and after hearing oral arguments, entered a summary judgment in favor of Mercy Medical and CHE. In its summary-judgment order, the trial court determined (1) that the 2000 AIGA Act applied because it was the law in effect at the time of Reliance’s insolvency and at the time the judgment was entered in Keao’s workers’ compensation action, (2) that the 2009 AIGA Act did not apply retroactively because the revisions to the Act were substantive, not remedial, and (3) that AIGA was not entitled to reimbursement because, under the 2000 AIGA Act, Mercy Medical’s net worth did not exceed $25,000,000.

II. Standard of Review

“ ‘[Bjecause the underlying facts are not disputed and this appeal focuses on the application of the law to those facts, there can be no presumption of correctness accorded to the trial court’s ruling.’ Beavers v. County of Walker, 645 So.2d 1365, 1373 (Ala.1994) (citing First Nat’l Bank of Mobile v. Duckworth, 502 So.2d 709 (Ala.1987)). A ruling on a question of law carries no presumption of correctness, and appellate review is de novo. See Rogers Found. Repair, Inc. v. Powell, 748 So.2d 869 (Ala.1999); Ex parte Graham, 702 So.2d 1215 (Ala.1997).”
Ex parte City of Brundidge, 897 So.2d 1129, 1131 (Ala.2004).

III. Analysis

AIGA essentially presents three arguments on appeal. First, AIGA argues that its right of reimbursement, under both the 2000 AIGA Act and the 2009 AIGA Act, vests upon the payment of benefits to the claimant on behalf of the insured. Alternatively, citing Ex parte Water Works & Sanitary Sewer Board of Montgomery, 93 So.3d 94 (Ala.2012), AIGA argues that the 2009 AIGA Act should apply to all payments of claims occurring after August 1, *1067 2009. Second, AIGA argues that the 2009 AIGA Act applies retroactively because, it argues, the 2009 amendments to the AIGA Act were remedial and simply defined, among the things, “net worth” and “high net worth insured” and provided the methodology for calculating an insured’s net worth. Last, AIGA argues that, under either or both the 2000 AIGA Act and the 2009 AIGA Act, it was entitled to recover money it had paid on behalf of Mercy Medical because Mercy Medical’s net worth exceeded $25,000,000, even under the 2000 AIGA Act. We consider these arguments in turn.

A. Vesting of Right to Reimbursement

AIGA contends that its right to reimbursement from its member insurers vests upon its payment of benefits. Mercy Medical and CHE submit that AIGA’s right to reimbursement vests at the time of the insolvency of the insured. We conclude, based on the plain language of § 27-42-2, which states the purpose behind the AIGA Act, that the right to reimbursement vests at the time of the insured’s insolvency.[4]
Although this Court has not yet considered what law applies to an insurance-guaranty matter such as this, the plain language of the AIGA Act is instructive. Section 27-42-2, Ala.Code 1975, provides: “The purpose of this chapter is to provide a mechanism for the payment of covered claims under certain insurance policies, to avoid excessive delay in payments and to avoid financial loss to claimants or policyholders because of the insolvency of an insurer, to assist in the detection and prevention of insurer insolvencies and to provide an association to assess the cost of such protection among insurers.” The clear purpose of the AIGA Act is to protect policyholders, like Mercy Medical, from financial losses resulting from the insolvency of the insurer. Additionally, § 27-42-4, Ala.Code 1975, states: “This chapter shall be liberally construed to effect the purpose under Section 27-42-2 which will constitute an aid and guide to interpretation.” Accordingly, the legislature has directed a liberal construction of the AIGA Act in favor of claimants and insureds or policyholders. Both the 2000 AIGA Act and the 2009 AIGA Act consistently refer to the date of the insurer’s insolvency as the date on which critical determinations are made. The claim against AIGA does not accrue until the insurer is declared insolvent. The date of insolvency triggers AIGA’s obligation to handle the claim and to make all decisions regarding the disposition of a covered claim. Thus, we conclude that the date of the insurer’s insolvency controls in determining when AIGA’s right to reimbursement vests.
To the extent AIGA argues that the 2009 AIGA Act should apply to all payments on claims occurring after August 1, 2009, its argument is misplaced. AIGA cites Ex parte Water Works, supra, for the proposition that each payment on a workers’ compensation claim gives rise to a new statutory right to be considered under the law in effect at the time of the payment. In Ex parte Water Works, supra, this Court, in considering the applicable statute of limitations to AIGA’s reimbursement claims, did not agree with the arguments advanced by AIGA. Instead, this Court, affirming the judgment of the Court of Civil Appeals, applied the AIGA Act in effect on the date AIGA became obligated to make a claims payment in determining that a six-year statute-of-limitations period *1068 began to run when a payment was made, regardless of whether AIGA was aware of the insured’s net-worth status at that time.
The parties do not dispute that Reliance was declared insolvent in 2001. The 2000 AIGA Act, therefore, not the 2009 AIGA Act, governs AIGA’s right to reimbursement in this case.

B. Retroactive Application of 2009 AIGA Act

We next consider which AIGA Act applies in regard to net-worth provisions: the 2000 AIGA Act or the 2009 AIGA Act. AIGA contends that the 2009 amendments to the AIGA Act defining “net worth” and “high net worth insured” are remedial changes to the net-worth provisions in the 2000 AIGA Act, in that they simply clarified how an insured’s “net worth” is determined and the methodology for calculating an insured’s “net worth.” Therefore, AIGA argues, the trial court erred in determining that the 2009 amendments to the 2000 AIGA Act defining “net worth” and “high net worth insured” were substantive changes to the 2000 AIGA Act and, therefore, cannot be applied retroactively to consolidate Mercy Medical’s and CHE’s net worth for purposes of determining whether Mercy Medical’s net worth exceeded $25,000,000, thereby giving AIGA the right to recoup statutory benefits paid on Keao’s workers’ compensation claim. Mercy Medical and CHE argue that the 2009 amendments to the 2000 AIGA Act substantively changed the law and should not apply retroactively to allow the consolidation of Mercy Medical’s and CHE’s net worth in determining Mercy Medical’s net worth.
Generally, retrospective application of a statute is not favored, absent an express statutory provision or clear legislative intent that the enactment apply retroactively as well as prospectively. See Kittrell v. Benjamin, 396 So.2d 93, 94 (Ala.1981) (citing City of Brewton v. White’s Auto Store, Inc., 362 So.2d 226, 227 (Ala.1978) (providing that we “indulge every presumption in favor of construing actions of the legislature to have a prospective operation unless the legislature’s intention is otherwise stated in express terms, or [its actions] clearly, explicitly, and unmistakably permit of no other meaning”)). In this case, the 2009 AIGA Act does not expressly address whether the legislature intended that § 27-42-5(7)(defining “high net worth insured”) and (11) (defining “net worth”) have retroactive application. Regardless, whether a statute may be applied retroactively turns on whether the statute affects substantive or procedural rights. Ex parte Burks, 487 So.2d 905, 907 (Ala.1985); Kittrell, 396 So.2d at 95 (a statute can have retroactive application if it affects procedural as opposed to substantive rights). Substantive laws are those that create, enlarge, diminish, or destroy vested rights. See Ex parte Bonner, 676 So.2d 925, 926 (Ala.1995). “Substantive law” is “[t]he part of law that creates, defines, and regulates the rights, duties, and powers of parties,” Black’s Law Dictionary 1567 (9th ed.2009), as opposed to “adjective, procedural, or remedial law,” which is “ favored, by the courts, and [its] retrospective application is not obnoxious to the spirit and policy of the law,’ ” and which is “exemplified by [laws] that ‘ “impair no contract or vested right, [and do not disturb past transactions,] but preserve and enforce the right and heal defects in existing laws prescribing remedies.” ’ ” Ex parte Bonner, 676 So.2d at 926 (quoting Ex parte Burks, 487 So.2d at 907, and Jones v. Casey, 445 So.2d 873, 875 (Ala.1983), quoting in turn Dickson v. Alabama Mach. & Supply Co., 18 Ala.App. 164, 165, 89 So. 843, 844 (1921)).
Under the 2000 AIGA Act, insureds whose net worth exceeded $25,000,000 on *1069 December 31 of the year preceding their insurer’s insolvency are either not entitled to statutory benefits under the AIGA Act or are required to reimburse AIGA for statutory benefits expended on behalf of the insured. §§ 27-42-5(4) and 27-42-11(d), Ala.Code 1975, of the 2000 AIGA Act. Section 27-42-ll(d), as it read following the 2000 amendment to the recoupment provision in the AIGA Act, provided:
“(d) The association shall have the right to recover from the following persons the amount of any covered claim paid on behalf of the person:
“(1) An insured whose net worth on December 31 of the year immediately preceding the date the insurer becomes an insolvent insurer exceeds twenty-five million dollars ($25,000,-000) and whose obligations, including obligations under workers’ compensation insurance coverages, to other persons are satisfied in whole or in part by the payments.
“(2) Any person who is an affiliate of the insolvent insurer and whose liability obligations under workers’ compensation insurance coverages, to other persons are satisfied in whole or in part by the payments.”
Under the 2000 AIGA Act, a “covered claim” was defined as:
“(4) COVERED CLAIM.... ‘Covered Claim’ shall not include any amount due any reinsurer, insurer, insurance pool, or underwriting association, as sub-rogation recoveries or otherwise, nor shall ‘covered claim’ include any first party claims by an insured whose net worth exceeds twenty-five million dollars ($25,000,000) on December 31 of the year prior to the year in which the insurer becomes an insolvent insurer; provided that an insured’s net worth on that date shall be deemed to include the aggregate net worth of the insured and all of its subsidiaries as calculated on a consolidated basis.”
§ 27-42-5(4), Ala.Code 1975.
Effective August 1, 2009, the legislature substantially revised the 2000 AIGA Act, adding, among other things, provisions to define “affiliate,” “control,” “net worth,” and “high net worth insured” and to clarify the method for calculating an insured’s “net worth.” § 27-42-5(2), (5), (7), and (11), Ala.Code 1975. Under the 2009 AIGA Act, AIGA has “the right to recover from a high net worth insured all amounts paid by [AIGA] to or on behalf of such insured, whether for indemnity, defense, or otherwise,” and “[AIGA] shall have the right to recover from any person who is an affiliate of the insolvent insurer all amounts paid by [AIGA] to or on behalf of such person, whether for indemnity, defense, or otherwise.” § 27-42-ll(e) and (f), Ala.Code 1975. The 2009 AIGA Act defines “affiliate,” “control,” “net worth,” and “high net worth insured” as follows:
“(2) Affiliate. A person who directly, or indirectly, through one or more intermediaries, controls, is controlled by, or is under common control with another person on December 31 of the year immediately preceding the date the insurer becomes an insolvent insurer.
[[Image here]]
“(5) Control. The possession, direct or indirect, of the power to direct or cause the direction of the management and policies of a person, whether through the ownership of voting securities, by contract other than a commercial contract for goods or nonmanagement services, or otherwise, unless the power is the result of an official position with or corporate office held by the person. Control shall be presumed to exist if a person, directly or indirectly, owns, controls, holds with the power to vote, or holds proxies representing, 10 percent *1070 or more of the voting securities of any other person. This presumption may be rebutted by a showing that control does not exist in fact.
[[Image here]]
“(7) High Net Worth Insured. Any insured whose net worth exceeds twenty-five million dollars ($25,000,000) on December 31 of the year prior to the year in which the insurer becomes an insolvent insurer; provided that an insured’s net worth on that date shall be deemed to include the aggregate net worth of the insured and all of its subsidiaries and affiliates as calculated on a consolidated basis.
[[Image here]]
“(11) Net worth. The total assets of a person, less the total liabilities against those assets as determined in accordance with generally accepted accounting principles. A person’s net worth shall be deemed to include the aggregate net worth of the person and all of its subsidiaries and affiliates as calculated on a consolidated basis.”
§ 27-42-5, Ala.Code 1975.
A plain reading of the 2009 AIGA Act reveals that the new definitions of “affiliate,” “control,” “high net worth insured,” and “net worth” are substantive changes the retroactive application of which would adversely affect and impair the rights of those insured and covered by the AIGA Act, including Mercy Medical. In this case, the definitions of “affiliate,” “control,” “high net worth insured,” and “net worth” in the 2009 AIGA Act significantly narrow the determination of net worth under the 2000 AIGA Act, and in turn narrow the rights of policyholders and insureds under the AIGA Act. In essence, AIGA contends that because the addition in the 2009 AIGA Act of the definitions was intended to “clarify” or “amend” provisions in the 2000 AIGA Act (i.e., by defining “affiliate,” “control,” “high net worth insured,” and “net worth”), this Court should presume that the legislature intended the 2009 AIGA Act to apply retroactively.
Although it is true that procedural or remedial statutes may operate retrospectively even absent a clear legislative intent in favor of retroactivity, see Ex parte Bonner, 676 So.2d at 926, that is not the case with respect to amendments that constitute a substantive change, either by creating new rights or taking away vested rights. Id. That is, if a statute accomplishes a remedial purpose by creating new substantive rights or by imposing new legal burdens, the presumption against retroactivity would still apply. See Ex parte Burks, 487 So.2d at 907.
AIGA’s argument to the contrary, a plain reading of the 2009 AIGA Act reveals that the new definitions of “affiliate,” “control,” “high net worth insured,” and “net worth” are substantive changes because their retroactive application would adversely affect and impair the rights of those covered by the AIGA Act, including Mercy Medical. In this case, the definitions of “affiliate,” “control,” “high net worth insured,” and “net worth” in the 2009 AIGA Act significantly narrow Mercy Medical’s rights by changing the methodology for calculating its net worth. Thus, we conclude that the 2009 AIGA Act does not apply retroactively in this case because the 2009 AIGA Act substantively changed the law.

C. Reimbursement by Mercy Medical and CHE

Last, we consider Mercy Medical’s net worth for purposes of reimbursement under the 2000 AIGA Act. AIGA contends that, even applying the 2000 AIGA Act, CHE’s net worth should be considered in determining Mercy Medical’s net worth. *1071 Mercy Medical and CHE respond that, under the plain language of the 2000 AIGA Act, CHE’s net worth should not be considered and AIGA is not entitled to reimbursement from Mercy Medical.
As set out above, the 2000 AIGA Act was the act in effect at the time of Reliance’s insolvency and/or at the time AIGA’s coverage obligations were reduced to a liquidated sum by the judgment in Keao’s workers’ compensation action. Under the plain language of § 27-42-5 and § 27-42-11 of the 2000 AIGA Act, quoted above, Mercy Medical, the insured, had assets of less than $25,000,000. Section 27-42-5 states that an insured’s net worth includes “the net worth of the insured and all of its subsidiaries as calculated on a consolidated basis.” Mercy Medical had no subsidiaries. Thus, Mercy Medical’s net worth, for the purposes of the 2000 AIGA Act, was less than $25,000,000.
Likewise, the 2000 AIGA Act also provides which insureds must reimburse AIGA for claim payments. Section 27-42-11(d)(1) clearly stated that AIGA could recover any amounts it had paid “on behalf of’ an insured whose net worth exceeds $25,000,000 and whose liability obligations are satisfied in whole or in part by the payments. AIGA paid amounts to satisfy Mercy Medical’s legal obligation to Keao, Mercy Medical’s employee. However, because Mercy Medical’s net worth was below $25,000,000, Mercy Medical is not obligated to reimburse AIGA for those payments made by AIGA.
Similarly, under the 2000 AIGA Act, CHE is not obligated to reimburse AIGA either. CHE is not a subsidiary of Mercy Medical. Instead, it is Mercy Medical’s sole member, a legal status very different from that of a subsidiary. Further, the payments made to Keao by AIGA were not made on CHE’s behalf. The payments to Keao were solely the legal responsibility of Mercy Medical, and AIGA’s payments were those it was statutorily obligated to make “on behalf of’ Mercy Medical. Accordingly, we conclude that neither Mercy Medical nor CHE owe reimbursement to AIGA under the 2000 AIGA Act.

IV. Conclusion

For the foregoing reasons, we conclude that the applicable law governing the vesting of AIGA’s right to reimbursement of claims paid is the law in effect on the date of the insurer’s insolvency. We also conclude that the addition of the net-worth definitions in the 2009 AIGA Act are substantive and do not apply retroactively in this case. Finally, we conclude that AIGA is not entitled to reimbursement from Mercy Medical or CHE because, under the 2000 AIGA Act, Mercy Medical’s net worth did not exceed $25,000,000 and the payments were not made on behalf of CHE. Accordingly, we affirm the trial court’s judgment in favor of Mercy Medical and CHE.
AFFIRMED.
MOORE, C.J., and BOLIN, MURDOCK, and BRYAN, JJ., concur.

. AIGA paid several workers’ compensation claims, which were at issue in the underlying action. However, because AIGA made most of those payments more than six years before AIGA filed the underlying action, and this Court has held in a separate action brought by AIGA that a six-year statute of limitations applied to AIGA’s claims for reimbursement, only the workers' compensation claim related to Brenda Keao was not time-barred. See Ex *1065 parte Water Works & Sanitary Sewer Bd. of Montgomery, 93 So.3d 94 (Ala.2012).

. CHE, which provides assistance and support to charitable health organizations such as Mercy Medical, paid the premiums and was named as the insured on the Reliance workers’ compensation insurance policy. Mercy Medical, which operates health-care facilities in Daphne and Mobile, was added to CHE’s policy by endorsement on November 1, 1999. According to the record, Mercy Medical was reorganized in 1997, and CHE became Mercy Medical’s sole member at that time.

. AIGA also sought reimbursement for other workers' compensation claims that it had paid and that were at issue in this action. However, those payments were made more than six years before AIGA filed the underlying action and are time-barred. See Ex parte Water Works & Sanitary Sewer Bd. of Montgomery, 93 So.3d 94 (Ala.2012) (holding that six-year statute of limitations applied to AIGA's claim for reimbursement). See note 1.

. Mercy Medical and CHE do not argue that the guaranty-association law that applied to the insurance coverage Mercy Medical had in place at the time of Keao's injury should govern in a case such as this. We therefore do not consider the question here.