MOORE, Chief Justice.
AltaPointe Health Systems, Inc. (“AHS”), appeals from an order entered by Judge Don Davis of the Mobile County Probate Court denying its petition for an award of expert-witness fees in civil-commitment proceedings. This case presents a matter of first impression: Whether a publicly funded organization is entitled to expert-witness fees for an employee who gives expert testimony at involuntary civil-commitment hearings.

I. Facts and Procedural History

The board of directors of AHS, the community mental-health agency for Mobile *1000 County and Washington County, is appointed by the governing bodies that authorize and fund it. See § 22-51-1 et seq., Ala.Code 1975; Ex parte Greater Mobile-Washington Cnty. Mental Health-Mental Retardation Bd., Inc., 940 So.2d 990, 1005 (Ala.2006) (holding that AHS, although a public corporation, § 21-51-2, Ala.Code 1975, “is an independent entity rather than a State agency”). An AHS employee provides expert-witness testimony at civil-commitment hearings based on AHS’s court-ordered evaluation of respondents to involuntary-commitment petitions, known as “consumers.” Until April 2007, the Mobile County Probate Court had routinely paid AHS $160 to provide expert testimony at a commitment hearing. At that time, however, the probate court decided to terminate the payment of that fee because AHS was already being compensated independently for conducting mental-health evaluations of consumers. As the probate court explained:
“This action was taken when the Court learned that some of the other probate courts around the State of Alabama did not tax such fee requests as court costs in instances where the entity providing the evaluations received compensation from other sources, as the Court understood that AHS received funding from other sources with regard to the evaluations AHS was performing.”
Despite the probate court’s change in policy, AHS continued to submit monthly bills for providing testimony at commitment hearings. On October 27, 2009, the probate court held a hearing on these accumulated requests for payment. On January 14, 2010, the probate court denied payment, holding that the testimony of a salaried AHS employee did not require reimbursement by the court. “AHS is not actually incurring the fees for which it is seeking payment from the Alabama State General Fund and it appears that AHS is seeking double payment for a service it has provided.” The probate court viewed the testimony as “a vital and integral part of the evaluation process,” for which AHS was already compensated through general public funding. The court also noted that the AHS employees testifying “do not individually bill either AHS or the Court for their time spent” and that any payment would go to AHS, not the employee/witness. AHS did not appeal the denial of its request.
On August 17, 2011, AHS filed a new fee petition, seeking payment for testimony at commitment hearings from July 2008 through August 2011. An exhibit to the petition listed all the days AHS employees had provided testimony and the number of hearings on each day. In total, AHS requested $188,800, representing testimony at 1,180 hearings at a rate of $160 per hearing.[1] On average, AHS provided testimony on the advisability of involuntary commitment at 400 hearings per year, or about 8 per week. The probate court typically held all the hearings for the week on the same day of the week. AHS supported its petition with affidavits from Kevin Markham, AHS’s chief financial officer, and Joyce Barber, its coordinator of social services. Markham and Barber also *1001 testified at the hearing on AHS’s petition held on October 5, 2011.
Markham testified that AHS received funding from the City of Mobile, Mobile County, Medicare, Medicaid, from private insurance companies, and from federal grants. None of these funds, however, he said, could be used for payment of expert-witness fees at commitment hearings. Markham provided documentation that neighboring Washington County authorized payment at a flat rate of $180 for AHS’s expert testimony at commitment hearings; that Chilton County paid $100 per hour to a local mental-health center for court screening, evaluation, and testimony; and that the Montgomery County Probate Court allowed payment of expert-witness fees at a rate of $70 per hour to the Montgomery Area Mental Health Authority for testimony at commitment hearings by qualified employees.
Barber is “the designated employee of [AHS] who ... testifies during civil commitment proceedings in the Probate Court.” Markham Affidavit. Her full-time job (except for Tuesday afternoons) is “preparing to testify and testifying in Probate Court.” The expert-witness services that AHS provides to the probate court consist solely of Barber’s work. “In defining expert witness services in this manner,” Barber stated, “I have excluded the services provided by the clinical staff persons who perform the evaluations and the services of the clinical staff persons who provide mental health treatment to the consumers.”
Barber provides specialized knowledge that not only assists the trier of fact, but also is indispensable to its decision-making. In the week before each commitment hearing, Barber reviews records, interviews patients and relevant personnel, and consults with the treating physicians. Coupled with her formal training and experience as a professional counselor, she is qualified by knowledge, skill, experience, training, and education as an expert on civil-commitment evaluations.[2] She does not merely report the professional opinion of the treating psychiatrist. Instead, she is intimately involved in the evaluation process from beginning to end. Barber carefully develops her understanding of each case for the purpose of accurately informing the probate court of the status and prospects of each consumer.
The probate judge acknowledged that Barber provided “an expert opinion” and complimented her on the quality of her testimony. “[S]he is very prepared. She is able to — to answer most questions that lawyers and I have.... So I want to compliment Ms. Barber for the manner in which she discharges her duties at the court hearings. And thank you for what you do in that regard.” See Charles Gamble, McElroy’s Alabama Evidence § 127.02(2) (5th ed. 1996) (“The quantum of necessary expertise is determined by whether it is sufficient to justify an opinion that will be of aid to or assist the trier of fact.”).
In its order of April 19, 2012, denying payment of expert-witness fees to AHS, the probate court did not dispute that Barber qualified as an expert witness but instead claimed that “[t]he statute is not intended to reimburse an employer for time spent by an employee testifying, even if such employee may qualify as an expert witness.” Thus, the probate court held, if AHS retained an outside consultant to tes *1002 tify at commitment hearings and then proffered the bills to the court for payment, “such expert fees may be awarded if reasonable.” The court also found that AHS’s in-court testimony was an integral part of the evaluation process and thus not separately reimbursable as expert testimony.
The probate court denied the fee petition in its entirety. AHS filed a notice of appeal on May 31, 2012.

II. Standard of Review

Because the issue before this Court is the proper interpretation of § 22-52-14, Ala.Code 1975, our review is de novo. “A ruling on a question of law carries no presumption of correctness, and appellate review is de novo.” Ex parte City of Brundidge, 897 So.2d 1129, 1131 (Ala.2004).

III. Analysis

“The jurisdiction of the probate court is limited to the matters submitted to it by statute.” Wallace v. State, 507 So.2d 466, 468 (Ala.1987). See § 12-13-1, Ala.Code 1975. Probate courts have jurisdiction over petitions seeking the involuntary commitment of persons believed to be mentally ill. Section 22-52-1.2, Ala.Code 1975. The Code also provides for payment of the costs of the commitment proceeding, including expert-witness fees.
“In any commitment proceeding, the fees of any attorney appointed by the probate judge to act as advocate for the petition and any attorney or guardian ad litem appointed by the probate judge for the person sought to be committed shall be set at the rates established by Section 15-12-21; and any expert employed to offer expert testimony, in such amounts as found to be reasonable by the probate judge; and all other costs allowable by law shall be paid by the state general fund upon order of the probate judge....”
§ 22-52-14, Ala.Code 1975 (emphasis added).
The issue for resolution in this appeal is whether AHS is eligible for expert-witness fees under § 22-52-14 when Barber or another qualified employee of AHS testifies as an expert witness in a civil-commitment hearing.
In interpreting a law, we first look to the plain language of the statute. “Words used in a statute must be given their natural, plain, ordinary, and commonly understood meaning, and where plain language is used, a court is bound to interpret that language to mean exactly what it says.” Tuscaloosa Cnty. Comm’n v. Deputy Sheriffs’ Ass’n of Tuscaloosa Cnty., 589 So.2d 687, 689 (Ala.1991). Section 22-52-14, Ala.Code 1975, states: “In any commitment proceeding, the fees of ... any expert employed to offer expert testimony, in such amounts as found to be reasonable by the probate judge ... shall be paid by the state general fund upon order of the probate judge.... ” (Emphasis added.)
The probate court contends that AHS, as a recipient of public funding, is entitled to no separate compensation for providing expert testimony to the court. However persuasive such an argument might be as a matter of public policy, the statute itself makes no such distinction, but instead applies to “any expert employed to offer expert testimony.”[3] Whether publicly funded regional mental-health agencies should be denied expert-witness fees for presenting expert testimony regarding court-ordered evaluations is an issue for the legislature to decide, not *1003 the courts. Once the AHS employee qualifies as an expert witness, reasonable fees “shall be paid.” Further, “all questions of propriety, wisdom, necessity, utility and expediency in the enactment of laws are exclusively for the legislature, and are matters with which courts have no concern.” Jansen v. State, 273 Ala. 166, 168, 137 So.2d 47, 48 (1962). Because the amendment of statutes is a task for the legislature, not the courts, we are not at liberty to add exceptions to a statute that the legislature has not seen fit to supply. See Personnel Bd. of Mobile Cnty. v. City of Mobile, 264 Ala. 56, 60-61, 84 So.2d 365, 369 (1955) (“[T]he only authority which has the power to make State laws is the legislature.”).
The probate court complained that it had “not been provided any authority which would allow for fees ... for services rendered by salaried employees of the party making the request.” But no such additional authority is necessary when the statute in question makes no exception to its general requirement for payment of reasonable fees for expert testimony. The probate court’s order states: “AHS is not employing outside experts and thus is not incurring any expert fees or expenses.” Section 22-52-14, however, does not require that AHS hire an outside expert and incur specifically billed fees before AHS may qualify for expert-witness fees. Should the legislature desire to change the statute to disallow experts such as those employed by AHS from receiving expert-witness fees from the State’s general fund, it is free to do so. Neither the probate court nor this Court, however, is free to limit the scope of the statute through an exclusionary judicial construction not stated in its text. See Dennis v. Chang, 611 F.2d 1302, 1307 (9th Cir.1980) (rejecting argument that award of attorney fees to state-funded legal-services organization was unfair “double payment” and finding that by not including such an exception in the Fee Awards Act, the “question of fairness has been resolved by Congress”); Del. Op. Att’y Gen. No. 78-003 (Feb. 13, 1978) (noting that state statute “governing the payment of expert witness fees, draws no distinction between expert witnesses who are public employees and other expert witnesses”). Just as “the trial court does not have the discretion to award fees for expert witnesses unless a statute authorizes the recovery of such fees,” Southeast Envtl. Infrastructures, L.L.C. v. Rivers, 12 So.3d 32, 52 (Ala.2008), it also does not have discretion to refuse reasonable fees where the legislature has authorized their payment.[4]

IV. Conclusion

By disqualifying AHS from receiving expert-witness fees for the testimony of its employees, the Mobile County Probate Court erred as a matter of law. If the probate court desires fact testimony regarding the services rendered by AHS to those committed to its care and the response of such persons to that care, the court may order the appearance of “non-expert” employees who do not provide an *1004 opinion and for whom no fee is required.[5] However, when the probate court elicits testimony from an expert witness provided by AHS on the issue of civil commitment and the witness is an employee of AHS, a plain reading of § 22-52-14 entitles AHS to such fees as the probate court in its discretion determines are reasonable.
We therefore reverse the Mobile County Probate Court’s order of April 19, 2012, and remand the case for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
STUART, J., concurs.
PARKER, J., concurs specially.
MURDOCK, J., concurs in part as to the rationale and concurs in the result.
BOLIN, MAIN, WISE, and BRYAN, JJ., concur in part and dissent in part as to the rationale and concur in the result.
SHAW, J., dissents.

. In its opening brief, AHS requests this Court to render a reduced award of $114,400, representing expert-witness testimony at 715 hearings from January 2010 through August 2011, approximately half the period covered by its petition in the probate court.

. "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise.” Rule 702(a), Ala. R. Evid.

. We understand "employed” to mean "to make use of” or "to use advantageously.” Meiriam-Webster’s Collegiate Dictionary 408 (11th ed. 2003).

. Although the qualifications of AHS's designated representative to give expert testimony are not at issue in this case, we do not wish to imply that the probate court must in all instances pay the fees of any expert, or proposed expert, who testifies in a civil-commitment hearing. The probate court, as in all cases, has the responsibility to qualify witnesses to testify. “Preliminary questions concerning the qualifications of a person to be a witness ... shall be determined by the court....” Rule 104(a), Ala. R. Evid. See also Advisory Committee's Notes to Rule 104(a) (“This principle is also applied when a trial court determines whether a witness's qualifications authorize the witness to testify as an expert.”).

. When the treating therapist also functions as a forensic witness, the doctor-patient relationship may be impaired. See Ralph Sloven-ko, On a Therapist Serving as a Witness, 30 J. Am. Acad. Psychiatry Law 10 (2002). AHS’s separation of the treatment and testimony functions may thus be beneficial to the consumers.