MOORE, Chief Justice
(dissenting).
At the heart of this case is an issue of first impression: Does Act No. 2011-627, Ala. Acts 2011 (“the Act”), which amended § 6-5-521, Ala.Code 1975, apply retroactively? Because I believe, based on settled precedent, that the answer is “no,” I respectfully dissent from affirming the summary judgment entered for defendant Better Living, Inc., d/b/a A Better Way.
I.
Rayna Reyes, an insurance seller, visited Don and JoAnn Phillips at their home in Lillian in June 2010. Responding to a request from Reyes for a glass of water, JoAnn removed a container from the freezer section of her refrigerator, poured a portion of the contents into a glass, and gave the glass to Reyes, who drank it. The Phillipses typically kept water in their freezer in plastic bottles. Unknown .to JoAnn, the bottle she selected contained Oxy-Tech, a 35% solution of hydrogen peroxide, which in its undiluted form is a hazardous substance. Don Phillips had purchased the product for health reasons and typically consumed it by mixing a few drops into a glass of water, thus diluting it to a 3% solution.
Reyes suffered permanent scarring of her mouth, throat, esophagus, and vocal cords and an impairment of her ability to speak and to swallow. She also alleged economic loss and pain and suffering.
On May 18, 2012, Reyes and her husband Richard[1] sued the Phillipses, the manufacturer, and Better Living, the retail store where Don Phillips purchased the product. After the Reyeses settled with the Phillipses and the manufacturer of Oxy-Tech, the only remaining claims in the case were those against Better Living alleging negligence and liability under the Alabama Extended Manufacturer’s Liability Doctrine (“the AEMLD”).[2] Better Liv- *343 tog filed both a motion to dismiss and a motion for a summary judgment. The two motions were identical except for the attachment of an affidavit from the owner of Better Living to the motion for a summary judgment. The affidavit provided factual support for the sole argument in the motions that Better Living, a retailer who neither manufactured nor had modified the bottle of Oxy-Tech sold to Don Phillips, was exempt under the Act from a product-liability action. The Reyeses opposed the motions in the trial court on the ground, now raised on appeal, that the Act, which became effective one year after the June 2010 incident, did not apply retroactively to nullify their common-law causes of action for negligence and strict liability under the AEMLD.[3] The trial court entered a summary judgment for Better Living, but provided no reasoning to explain its ruling. The Reyeses appeal.
II.
From its enactment in 1979 until its amendment in 2011, § 6-5-521, Aa.Code 1975, provided:
“(a) A ‘product liability action’ means any action brought by a natural person for personal injury, death, or property damage caused by the manufacture, construction, design, formula, preparation, assembly, installation, testing, warnings, instructions, marketing, packaging, or labeling of a manufactured product when such action is based upon (1) negligence, (2) innocent or negligent misrepresentation, (3) the manufacturer’s liability doctrine, (4) the Alabama extended manufacturer’s liability doctrine as it exists or is hereafter construed or modified, (5) breach of any implied warranty, or (6) breach of any oral express warranty and no other. A product liability action does not include an action for contribution or indemnity.
“(b) The definition used herein is to be used for purposes of this division and is not to be construed to expand or limit the status of the common or statutory law except as expressly modified by the provisions of this division.”
The Act added the following subsections to § 6-5-521:
“(b) No product liability action may be asserted or may be provided a claim for relief against any distributor, wholesaler, dealer, retailer, or seller of a product, or against an individual or business entity using a product to the production or delivery of its products or services (collectively referred to as the distributor) unless any of the following apply:
“(1) The distributor is also the manufacturer or assembler of the final product and such act is causally related to the product’s defective condition.
“(2) The distributor exercised substantial control over the design, testing, manufacture, packaging, or labeling of the product and such act is causally related to the product’s condition.
“(3) The distributor altered or modified the product, and the alteration or modification was a substantial factor *344 in causing the harm for which recovery of damages is sought.
“(4) It is the intent of this subsection to protect distributors who are merely conduits of a product. This subsection is not intended to protect distributors from independent acts unrelated to the product design or manufacture, such as independent acts of negligence, wantonness, warranty violations, or fraud.
“(c) Notwithstanding subsection (b), if a claimant is unable, despite a good faith exercise of due diligence, to identify the manufacturer of an allegedly defective and unreasonably dangerous product, a product liability action may be brought against a distributor, wholesaler, dealer, retailer, or seller of a product, or against the individual or busiriess entity using a product in the production or delivery of its products or services. The claimant shall provide an affidavit certifying that the claimant, or the attorney therefor, has in good faith exercised due diligence and has been unable to identify the manufacturer of the product in question.
“(d) In a product liability action brought pursuant to subsection (c), against a distributor, wholesaler, dealer, retailer, or seller of a product, or against the individual or business entity using a product in the production or delivery of its products or services, the party, upon answering or otherwise pleading, may file an affidavit certifying the correct identity of the manufacturer of the product that allegedly caused the claimant’s ■injury. Once the claimant has received an affidavit, the claimant shall exercise due diligence to file an action and obtain jurisdiction over the manufacturer. Once the claimant has commenced an action against the manufacturer, and the manufacturer has or is required to have answered or otherwise pleaded, the claimant shall voluntarily dismiss all claims against any distributor, wholesaler, dealer, retailer, or seller of the product in question, or against the individual or business entity using a product in the production or delivery of its products or services, unless the claimant can identify prima facie evidence that the requirements of subsection (b) for maintaining a product liability action against such a party are satisfied.”[4]
(Emphasis added.) The new subsections exempt from liability retailers like Better Living “who are merely conduits of a product.” Better Living did not manufacture Oxy-Tech or label the container of Oxy-Tech, nor did it alter or modify the product.
The legislature amended § 6-5-521 in 2011. The Reyeses’ causes of action accrued in June 2010, when Rayna drank from the glass of Oxy-Tech. The Reyeses filed suit in May 2012 — within the two-year statute-of-limitations period for personal injuries, § 6-2-38(Z), Ala.Code 1975, but after the effective date of the Act. The dispositive question is whether the Act erased the Reyeses’ causes of action against Better Living. Or, stated differently, do we apply the law in effect in 2010 when Rayna’s injury occurred or the law in effect in 2012 when the underlying action was filed?[5]
*345 III.
A statute that' eliminates a cause of action does not apply to a cause of action that has already accrued unless the legislature expressly makes the statute retroactive. “In Alabama, retrospective application of a statute is generally not favored, absent an express statutory provision or clear legislative intent that the enactment apply retroactively as well as prospectively.” Jones v. Casey, 445 So.2d 873, 875 (Ala.1983). The presumption in Alabama law is that a newly enacted statute does not disturb causes of action that have accrued under previously existing law unless the legislature specifically so provides. “Courts indulge every presumption in favor of construing actions of the legislature to have a prospective operation unless the legislature’s intention is otherwise stated in express terms, or clearly, explicitly, and unmistakenly permit[s] of no other meaning.” City of Brewton v. White’s Auto Store, Inc., 362 So.2d 226, 227 (Ala.1978).[6]
The Act contains two sections that define its temporal scope:
“Section 2. This act shall apply only to civil actions commenced or filed on or after the effective date of the act.
“Section 3. This act shall become effective immediately following its passage and approval by the Governor, or its otherwise becoming law.”[7]
Because neither of these sections “clearly, explicitly, and unmistakenly” states that the amendment of § 6-5-521 is to have retroactive effect, the Act does not apply to a cause of action that accrued before its effective date. By contrast, see Ex parte F.P., 857 So.2d 125, 136 (Ala.2003) (analyzing a statutory amendment, the enacting legislation for which stated: “This act shall have- retroactive effect to January 1, 1997.”).
An éxception to the presumption against retroactivity does exist for statutes that are merely remedial. “Remedial statutes are those statutes relating to remedies or modes of procedure.” Mason v. USA Med. Ctr., 646 So.2d 90, 91 (Ala.Civ.App.1994). Such statutes “do not create new rights or take away vested ones.” Street v. City of Anniston, 381 So.2d 26, 29 (Ala.1980). A statute 'is remedial if “it concerns matters of procedure rather than substantive rights.” Mason, 646 So.2d at 9R A right to sue for injuries caused by a dangerous product is' certainly a substantive right. “[I]t is difficult to imagine how a statute creating a new immunity from suit could possibly be viewed as remedial and not substantive.” Kruse v. Corizon, Inc. (No. 12-0212-WS-B, July 5, 2013) (S.D.Ala.2013) (not published in F.Supp.3d). •
Bécause the Act changed the substantive law, namely that “part of the law that creates, defines, and regulates the rights, duties, and powers of parties,” Black’s Law Dictionary 1658 (10th ed.2014), and because the legislature did not state its intent that the Act apply retroactively, the Act has no effect on the Reyesés’ causes of action, which accrued in 2010. “It is a fundamental precept of our jurisprudence that substantive legal interests spring *346 from the laiv in effect at the time such interests are alleged to have arisen or to have been violated.” Alabama Power Co. v. Director of Indus. Relations, 36 Ala.App. 218, 221, 54 So.2d 786, 788 (1951) (emphasis added).[8] See also Kaiser Aluminum & Chem. Corp. v. Bonjorno, 494 U.S. 827, 855, 110 S.Ct. 1570, 108 L.Ed.2d 842 (1990) (Scalia, J., concurring) (noting “[t]he principle that the legal effect of conduct should ordinarily be assessed under the laio that existed when the conduct took place ” and citing extensive authority for the proposition that this principle “has timeless and universal human appeal” (emphasis added)); Landgraf v. USI Film Prods., 511 U.S. 244, 265, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994) (stating that “the presumption against retroactive legislation is deeply rooted in our jurisprudence, and embodies a legal doctrine centuries older than our Republic”).[9]
Article I, § 13, Ala. Const.1901, states: “That all courts shall be open; and that every person, for any injury done him, in his lands, goods, person, or reputation, shall have a remedy by due process of law....” This provision has been construed to protect rights of action that have accrued before a legislative change in the law. “Undoubtedly the right to the remedy must remain and cannot be curtailed after the injury has occurred and right of action vested.... ” Pickett v. Matthews, 238 Ala. 542, 545, 192 So. 261, 264 (1939) (construing Art. I, § 13, Ala. Const.1901 (emphasis added)). See also Reed v. Brunson, 527 So.2d 102, 114 n. 5 (Ala.1988) (stating that “[sjection 13 protects the injured party’s right to a remedy from the time the civil action accrues until suit is filed”); Mayo v. Rouselle Corp., 375 So.2d 449, 451 (Ala.1979) (noting that § 13 “preserves to all persons a remedy for accrued or vested causes of action”). By contrast, an injury that accrues after the effective date of a law is governed by that law. See Baugher v. Beaver Constr. Co., 791 So.2d 932, 934 (Ala.2000) (finding no violation of § 13 where the “causes of action had not yet accrued when the statute was enacted”); Reed, 527 So.2d at 114 (finding no violation of § 13 where “injuries occurred after [an amendment to the Workers’ Compensation Act] became law”).
Because the Act substantively changed § 6-5-521 and did not contain an express statement of retroactivity, it could not void the Reyeses’ preexisting causes of action in negligence and under the AEMLD'. See Alabama Ins. Guar. Ass’n v. Mercy Med. Ass’n, 120 So.3d 1063, 1070 (Ala.2013) (holding that a presumption against retroactivity applies “with respect to amendments that constitute a substantive change ... by ... taking away vested rights”).
IV.
For the above-stated reasons, I dissent from affirming the trial court’s summary judgment. Although the trial court did not provide any reasoning to support its judgment, the sole argument presented in Better Living’s motion was that the Act *347 eliminated causes of action, like the Reyes-es’, that arise from injuries predating the Act but not sued on until after the effective date of the Act. Under the settled law that substantive statutory changes that lack an express retroactivity clause are to be applied prospectively only, the summary judgment should be reversed and this case remanded for further proceedings in the trial court.

. Richard claimed loss of consortium, a cause of action that is derivative of Rayna’s claims. See Ex parte Progress Rail Servs. Corp., 869 So.2d 459, 462 (Ala.2003) (holding that a loss-of-consortium claim is "derivative of, and dependent upon the outcome of, the direct claim'').

. "The AEMLD is a judicially created accommodation of Alabama law to the doctrine of strict liability for damage or injuries caused by allegedly defective products.” Keck v. Dryvit Sys., Inc., 830 So.2d 1, 5 (Ala.2002). The AEMLD “by definition ... include[s] not only the manufacturer, but also the supplier and the seller.” Casrell v. Altec Indus., Inc., 335 So.2d 128, 132 (Ala.1976). The AEMLD does *343 not subsume negligence claims against retailers. “We will not presume to so define the boundaries of the judicially created AEMLD so that it subsumes the common-law tort actions of negligence and wantonness against the retailer defendants.” Tillman v. R.J. Reynolds Tobacco Co., 871 So.2d 28, 35 (Ala.2003).

. "The operative facts raise this significant legal question for the Court: did the Alabama Legislature intend for this statute to be retroactive, so as to be applicable to an event that occurred before it was adopted?” Plaintiffs’ Supplemental Memorandum in Opposition to Defendant’s Motions to Dismiss and for Summary Judgment (March 14, 2013), at 2.

. Original subsection (b) was retained and redesignated subsection (e).

. The Reyeses contend that, even if the Act operates retroactively, their negligence cause of action is saved by the qualifying sentence that preserves actions against distributors for "independent acts unrelated to the product design or manufacture.” Because, under settled precedent, the Act does not apply retroactively to the Reyeses’ claims, I do not address the effect of the "independent-acts” exception.

. The federal rule is the same. "When a case implicates a federal statute enacted after the events in suit” and the statute does not contain an "express command” that it applies to preenactment events, "the court must determine whether the new statute would have retroactive effect, i.e., whether it would impair rights a party possessed when he acted." Landgraf v. USI Film Prods., 511 U.S. 244, 280, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994). "If the statute would operate retroactively, our traditional presumption teaches that it does not govern absent clear congressional intent favoring such a result.” Id.

. The Governor approved the Act, and it became effective, on June 9, 2011.

. For the application of this principle in a different context, see Ex parte Capstone Building Corp., 96 So.3d 77, 93 (Ala.2012) (noting that a legislature "cannot shorten a limitations period to the point that it does not permit a reasonable time for tire commencement of actions to vindicate already accrued claims”).

. The presumption against retroactive operation of a law underlies provisions forbidding ex post facto criminal laws, Art. I, § 22, Ala. Const.1901, and the taking of vested rights in property without compensation, Amend. V, U.S. Const. See Landgraf, 511 U.S. at 266, 114 S.Ct. 1483 (finding it “not surprising that the antiretroactivity principle finds expression in several provisions of our Constitution”).